IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WATERFRONT RENAISSANCE ASSOCIATES, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 07-1045 |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants | : | |

MEMORANDUM

Stengel, J.                                                                                          March 30, 2010

Waterfront Renaissance Associates contends that a City of Philadelphia ordinance is unconstitutional. Enacted in March, 2006, the ordinance set a new building height restriction.[1] According to Waterfront Renaissance, the ordinance empowers unelected civic associations to control re-development, delegates land-use decisions to private entities, and employs a variance process for coercive purposes. The City of Philadelphia wants this claim dismissed because Waterfront Renaissance lacks standing, the City cannot be held liable for actions of third parties, the claim is unripe and legally insufficient, and the statute of limitations bars the claim.[2] For the reasons set forth below, I will deny the City's motion.

---

[1] Second Amended Complaint at ¶ 254, CMR D.N. Corp. and Marine Towers LTD v. City of Philadelphia, No. 07-1045 (E.D. Pa. filed may 4, 2009) [hereinafter Second Amended Complaint].

[2] Brief of Defendant, the City of Philadelphia, in Support of Motion to Dismiss Count Fifteen of Plaintiffs' Second Amended Complaint Under Rule 12(b)(6), CMR D.N. Corp. and Marina Towers Ltd., No. 07-1045 (E.D. Pa. filed May 21, 2009) [hereinafter Defendant's Memorandum].

I.  BACKGROUND

On May 4, 2009, Waterfront Renaissance filed a second amended complaint, adding Count XV, which alleges a violation of Waterfront Renaissance's substantive due process rights. It avers Councilman Frank DiCicco's office "knowingly included the 65' height restriction in the March 2006 Ordinance[3] solely for the purpose of giving unelected civic associations in the First District a measure of control over and input into the planning of high-rise re-development projects within the [o]verlay [e]xtension through a compulsory variance process." Second Amended Complaint at ¶ 255.

Waterfront Renaissance claims Brian Abernathy, legislative aide to Councilman DiCicco, wrote to members of the Old City Civic Association and the Northern Liberties Neighborhood Association concerning the height restriction. Id. at ¶¶ 256-58. The civic associations stated they would like the height restriction added to the ordinance, noting "a height restriction would not prevent tall buildings from going up, but instead would allow for community input if and when someone wanted to go up high. It would be the only viable 'trigger' to allow input for any project that didn't include a restaurant, nightclub or other use prohibited by the Old City controls." Id. at 257. Among other communications,

---

[3] The March 2006 ordinance amended section 14-1610 of the Philadelphia Code. It extended a sixty-five foot height restriction to Waterfront Renaissance's site. In April 2006 city council again amended section 14-1610, and redefined the area controlled by the ordinance. The area now excluded the land east of Route I-95, excluding Waterfront Renaissance's site. The internet version of Section 14-1610, however, does not include the April amendment. Therefore, pursuant to the internet version of the ordinance, Waterfront Renaissance's site is within the restricted area.

Matt Ruben of the Northern Liberties Neighborhood Association wrote to Mr. Abernathy that "[o]n the matter of height, I'll just re-emphasize that I – and probably 95% of Northern Liberties residents – believe it's essential to have community input via the variance process for any high-rise proposals, and so a 65-foot height restriction should be added via amendment in the committee." Id. at ¶ 261.

Count XV alleges Councilman DiCicco included the height restriction in the overlay extension to allow the Northern Liberties Neighborhood Association, Old City Civic Association, and River's Edge Civic Association to control large high-rise construction "through a compulsory variance process." Second Amended Complaint at ¶¶ 267-68.[4] To obtain a variance, a developer "must bargain for the support of the civic associations." Id. at ¶ 268. It alleges "the Civic Association Defendants and Councilman DiCicco's office played down the height limitation and relied on 'councilmanic prerogative' to secure passage of the March 2006 ordinance." Second Amended Complaint at ¶ 269.

Waterfront Renaissance believes Councilman DiCicco and the civic association's practices lead to "ad hoc regulation of development[,] . . . arbitrary decisions, favoritism and discrimination." Id. at ¶ 279. Waterfront Renaissance alleges the "pattern of ad hoc regulation of redevelopment" caused its financing for the project to be placed in doubt, which factored into its decision to allow $105.5 million in committed financing to lapse.

---

[4] Property owned by the city and two additional properties were excluded from the overlay extension. Second Amended Complaint at ¶¶ 280-83.

3

Id. at 284. In addition, it alleges that in the summer of 2006 an officer of Northern Liberties Neighborhood Association requested a contribution from Waterfront Renaissance to fund a planning study. The officer informed Waterfront Renaissance "it would go a long way to resolving your problems." Id. at ¶ 258.

Waterfront argues the height restriction is unconstitutional because it empowers "civil associations to impose ad hoc changes and concessions regarding high-rise developments through a compulsory variance process, contrary to the master planning concept of Pennsylvania zoning law and the Philadelphia zoning code" and "because it effectively delegates land use and planning powers to non-governmental neighborhood associations." Second Amended Complaint at ¶ 286-87.

## II. DISCUSSION

### A. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County

4

Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Trans. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

### B. The Law of the Case Doctrine

Waterfront Renaissance maintains the law of the case doctrine applies to the issues raised in the City's motion to dismiss.[5] It argues the City raised the same issues in opposition to Waterfront Renaissance's motion for leave to amend and the issues were

---

[5] Plaintiff's Opposition to the Defendant City of Philadelphia's Motion to Dismiss Count XV of Plaintiff's Second Amended Complaint at 18-19, CMR D.N. Corp. and Marina Towers Ltd., No. 07-1045 (E.D. Pa. filed June 2, 2009).

5

decided when the court issued an order granting Waterfront Renaissance's motion.

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). The law of the case doctrine applies "to issues expressly decided by a court in prior rulings and to issues decided by necessary implication." Bolden v. Se. Pa. Transp. Auth., 21 F.3d 29, 31 (3d Cir. 1994).

The law of the case doctrine does not apply because the court did not decide any issue of law raised in the City's motion to dismiss when it granted Waterfront Renaissance's motion for leave to amend. A party shall be granted leave to amend its pleading when justice so requires. Fed. R. Civ. P. 15(a)(2). Leave to amend pleadings is to be freely given and the decision to grant leave to amend rests within the discretion of the court. Foman v. Davis, 371 U.S. 178, 182 (1962).[6] In contrast, a motion to dismiss shall be denied where a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Twombly, 550 U.S. at 570.

Granting Waterfront Renaissance's motion for leave to amend did not determine whether the claims raised in the amended complaint were sufficient to state a claim. Therefore, the law of the case doctrine does not apply. See Arizona, 460 U.S. at 618 (law

---

[6] Pursuant to Foman, the reasons leave to amend may be denied include undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies, undue prejudice to the opposing party, and futility of amendment. Id. "Only when these factors suggest that amendment would be 'unjust' should the court deny leave." Arthur v. Maersk, Inc., 434 F.3d 196, 203 (3d Cir.2006) (internal citations omitted).

of case doctrine applies where a court "decides . . . a rule of law").

C.  **Standing**

The United States Constitution "restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'" U.S. Const. Art. III § 2; Sprint Commc'n Co., L.P. v. APCC Servs., Inc., 128 S.Ct. 2531, 2535 (U.S. 2008).  The "case-or-controversy requirement is satisfied only where a plaintiff has standing." Sprint Commc'n Co., L.P., 128 S.Ct. at 2535.  "[T]o have article III standing, a plaintiff must adequately establish: (1) an injury in fact . . . ; (2) causation . . . ; and (3) redressability . . . ." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  To establish an injury in fact, the plaintiff must have a "'concrete and particularized' invasion of a 'legally protected interest.'" Id. (quoting Lujan, 504 U.S. at 560-61).  If the injury is widely-shared, to establish standing the injury "must . . . be concrete enough to distinguish the interest of the plaintiff from the generalized and undifferentiated interest every citizen has in good government." Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 138 (3d Cir. 2009) (citing Lujan, 504 U.S. at 573-74).

Contrary to the City's contention, Count XV does not allege a generalized grievance.  Waterfront Renaissance has alleged the height restriction reverses the twenty years of support it had received from the City, Amended Complaint at ¶ 5, the height restriction deprives Waterfront Renaissance of zoning and building permits to which it

7

had been entitled, id. at ¶¶ 51, 179, and the height restriction imposes a compulsory variance process not in place prior to its enactment, id. ¶¶ 255, 268, 286, 289.  These allegations are "concrete enough to distinguish the interest of the plaintiff from the generalized and undifferentiated interest every citizen has in good government."

The allegations are sufficient to establish Waterfront Renaissance has standing.  Waterfront Renaissance owns property which may be subject to the height restriction, developed plans for the property, engaged in discussions with the City and with civic associations concerning the property, and, if its allegations are true, it would suffer injury because its property would be subject to the ordinance's limitations.  See Toll Bros., Inc., 555 F.3d at 140-41 (plaintiff had standing where it held an option to property, expended considerable funds to maintain the option, planned the development, submitted a zoning application, and the zoning restrictions barred the planned developments, leaving the plaintiff unable to recoup the expended costs and decreasing the property's value); see also Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 190 (3d Cir. 2006) (plaintiffs alleged a cognizable injury where they alleged injury to property values).

### D. The City's Liability for the Conduct of Third Parties

Waterfront Renaissance alleges the March 2006 ordinance is facially invalid and has no legitimate purpose.  It bases its allegations on statements made by Councilman DiCicco, Mr. Abernathy, and members of the civic associations.  The City argues the

8

activities and statements of these various third parties are not binding on the city because municipal liability for § 1983 violations cannot be based on a respondeat superior theory. Defendant's Memorandum at 10.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Because count XV alleges a § 1983 violation based on substantive due process, Waterfront Renaissance must prove "an arbitrary and capricious act deprived [it] of a protected property interest." County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 165 (3d Cir. 2006) (Taylor Inv., Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1292 (3d Cir. 1993)). The act Waterfront Renaissance alleges deprived it of a property interest is the March 2006 ordinance, which contained a height restriction.

A city cannot be held liable under § 1983 unless "the execution of a policy or custom, whether made by its lawmakers or by those whose edicts or actions may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978). The City maintains it cannot be liable for the statements and actions of Councilman DiCicco because he was not acting pursuant a city policy or custom. The cases cited by the City address situations in which an employee unconstitutionally enforced a city ordinance or policy, see Monell, 436 U.S. at 660-61

(complaint alleged the Board of Education and Department of Social Services "had as a matter of official policy compelled pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons"); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1942 (U.S. 2009) (complaint alleged the defendants "adopted an unconstitutional policy that subjected respondent to harsh conditions of confinement on account of his race, religion, or national origin"), or the plaintiff failed to allege a policy or custom, see McTernan v. City of York, 564 F.3d 636, 657-58 (3d Cir. 2009).[7] Here, passing the ordinance is the alleged unconstitutional act. The city can be held liable for the enactment of an ordinance. See Maher v. Twp. of Long Beach, 2009 WL 3208419, at *17 (D.N.J. Sept. 20, 2009) (noting "a municipality may be held liable for, at the very least, the enactment of a municipal ordinance by its actual governing body").[8]

---

[7] McTernan clarifies that "Monell . . . created a 'two-path track' to municipal liability, depending on whether a § 1983 claim is premised on a municipal policy or custom." It states "[a] government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law." McTernan, 564 F.3d at 657 (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (alterations in original)).

[8] Waterfront Renaissance alleges the City is responsible because of the city council practice known as councilmanic prerogative. Opposition to Motion to Dismiss at 13-14. Under the councilmanic prerogative principle, city council will not pass legislation if the councilman whose district would be affected by the legislation objects to it, and will not oppose legislation the district's councilman supports. HSP Gaming, LP v. City Council for the City of Philadelphia, 939 A.2d 273, 283 (Pa. 2007).
Councilmanic prerogative could "fairly be said to represent official policy," and, therefore, the city may be liable for the actions of its employees pursuant to councilmanic prerogative.

### E. Ripeness

Pursuant to the finality rule, a plaintiff challenging land-use decisions must prove a "final decision has been reached by the agency before it may seek compensatory or injunctive relief in federal court on federal constitutional grounds." Acierno v.Mitchell, 6 F.3d 970, 975 (3d Cir. 1993) (quoting Hoehne v. County of San Benito, 870 F.2d 529, 533 (9th Cir.1989)). The finality rule, however, does not apply to facial challenges because a facial challenge argues "any application of the regulation is unconstitutional." County Concrete Corp., 442 F.3d at 164 (emphasis deleted).

Count XV alleges the ordinance was enacted solely for an improper purpose. Count XV does not allege the ordinance is unconstitutional because of its application to Waterfront Renaissance; rather it alleges the ordinance is unconstitutional in all applications. Therefore, count XV is a facial challenge. Compare Waterfront Renaissance Assoc. v. City of Philadelphia, No. 07-1045, 2008 WL 862705, at *7 n.15, 8 (E.D. Pa. filed Mar. 31, 2008) (finding claims were as applied challenges where Waterfront Renaissance alleged the ordinance had "no rational basis in its application to the [Waterfront Renaissance] site" and the notice violated due process "under the circumstances of this case" (emphasis deleted)), with id., at *7 (claim was a facial attack where it alleged the ordinance was unconstitutional because it was arbitrary and unreasonable, even though claim was supported with evidence of the plaintiff's project). Accordingly, the finality rule does not apply and Count XV is ripe for federal court

11

review.⁹

### F. Legal Sufficiency of Count XV

The City contends Waterfront Renaissance fails to set forth a cause of action for a facial violation of substantive due process. Motion to Dismiss at 16. "To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest." County Concrete Corp., 442 F.3d at 165 (citing Taylor Inv., Ltd., 983 F.2d at 1292).¹⁰

The City argues Count XV does not contain the "magic words:" the City "had no legitimate reason for enacting" the March 2006 ordinance. Defendant's Memorandum at 18. The Second Amended Complaint, however, does allege the ordinance included the height restriction "solely for the improper, unlawful and unconstitutional purpose of empowering unelected civic associations to control re-development in the First Councilmanic District of Philadelphia; of delegating land use decisions to private entities

---

⁹ For a more in depth discussion of ripeness and the finality rule see Waterfront Renaissance Assoc., No. 07-1045, 2008 WL 862705, at *6-8.

¹⁰ The City relies on Dunlap Appeal, 87 A.2d 299, 301 (Pa. 1952), arguing Waterfront Renaissance does not have a property interest because a property interest "vests upon securing a building permit and thereafter expending substantial sums in reliance on such building permit." Defendant's Memorandum at 17. The City essentially argues a person does not have a property interest, and, therefore, cannot allege a substantive due process challenge to a zoning ordinance, until he or she secures a building permit. This would preclude not only plaintiffs such as Waterfront Renaissance, who have not yet applied for a building permit or variance, but also plaintiffs who applied for, but were denied, a building permit.

without standards, thereby depriving owners of due process; and of employing the variance process for a coercive purpose for which it was not intended." Second Amended Complaint at ¶ 254.

Although the complaint does not use the words "no legitimate reason," it does maintain the height restriction was enacted "solely" for improper purposes. Id. Alleging the restriction had only improper purposes, and delineating those improper purposes, is sufficient to survive a motion to dismiss. In addition, the allegations raise more than a mere state law violation. If true, they may establish a substantive due process violation. See County Concrete Corp., 442 F.3d at 165.

### G. Statute of Limitations

The City maintains Count XV should be dismissed because Waterfront Renaissance filed the second amended complaint after the statute of limitations had expired. Defendant's Memorandum at 20. State statutes of limitations for personal injury actions apply to Section 1983 claims. Wilson v. Garcia, 471 U.S. 261, 276-79 (1985). Pennsylvania has a two-year statute of limitations for personal injury actions. 42 Pa. Con. Stat. Ann. § 5524(7).

Waterfront Renaissance filed the second amended complaint alleging Count XV on May 1, 2009, more than two years after the enactment of the March 2006 ordinance. Therefore, Count XV is barred unless it relates back to the original complaint. See

Monaco v. City of Camden, 2010 WL 438420, *3 (3d Cir. Feb. 8, 2010) (motion to amend futile unless it relates back to original complaint).

Federal Rule of Civil Procedure 15(c)(1)(B) provides:

> An amendment to a pleading relates back to the date of the original pleading when . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original complaint.

Although Waterfront Renaissance filed Count XV more than 2 years after the ordinance was passed, it is timely because it relates back to the original complaint. The original complaint alleged the extension of the overlay and the height restriction contained in the ordinance was a mistake. Count XV raises an alternate claim, i.e., the ordinance included a height restriction for an improper purpose at the request of the civic associations. Count XV arises out of the same occurrence, i.e., the enactment of the ordinance, as the counts raised in the original complaint. Accordingly, Count XV is timely because it relates back to the original complaint. See Fed. R. Civ. Proc. 15(c).

Accordingly, I will denying the City's motion to dismiss Count XV.

An appropriate order follows.