IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CMR D.N. CORP. AND MARINA : | |
| TOWERS LTD. t/a WATERFRONT : | CIVIL ACTION |
| RENAISSANCE ASSOCIATE, : | |
|     Plaintiff : | |
| : | |
| v. : | NO. 07-1045 |
| : | |
| CITY OF PHILADELPHIA, et al., : | |
|     Defendants : | |

MEMORANDUM

**Stengel, J.**                                                                                                                                      March 10, 2011

Waterfront Renaissance Associates LLP filed a motion for leave to supplement its complaint. Subsequently, Waterfront Renaissance filed a supplement to its motion for leave to supplement its complaint.[1]

Waterfront Renaissance seeks to add count XVI, which alleges the City of Philadelphia's Central Delaware Riverfront Overlay District and plan of development regulations are unconstitutional, and seeks to supplement count III and count IV with claims of promissory estoppel and detrimental reliance based upon those same regulations. It also wants to include a claim for damages, interest, costs, and attorney fees. Waterfront Renaissance seeks to "clarify that [Waterfront Renaissance's] complaint

---

[1] This opinion addresses the arguments raised in the responses filed by the City of Philadelphia. The Old City Civic Association and the Rivers Edge Civic Association also filed a response to Waterfront Renaissance's motion for leave to supplement. Count XVI, the detrimental reliance claim, and the promissory estoppel claim are not alleged against the Civic Associations, and the Civic Associations' motion for summary judgment has been granted in a separate memorandum and order.

challenges the March 2006 [o]rdinance in its entirety, including both the 65' height and the 70' width restrictions found therein."[2] I will grant Waterfront Renaissance's motion in part and deny it in part.

I.     **Background**

   A.     **The Current Action and the New Ordinance**

In February 2007, Waterfront Renaissance commenced this action in state court. It was removed to this court on March 15, 2007. The complaint challenged a March 2006 ordinance that extended a 65 foot height restriction to the area north of Old City, which included property owned by Waterfront Renaissance. Waterfront Renaissance amended its complaint twice.[3]

On March 5, 2009, Councilman Frank DiCicco introduced Bill 090170-A to create a zoning overlay for the Central Delaware Riverfront Overlay District. This is the area

---

   [2] Plaintiff's Supplement to its Motion for Leave to Supplement Complaint at 1, CMR D.N. Corp. and Marina Towers Ltd. v. City of Philadelphia, No. 07-1045 (E.D. Pa. filed Sept. 16, 2010).

   [3] On January 28, 2010, after the second amended complaint, Councilman Frank DiCicco introduced Bill 100014 to amend the Central Delaware Riverfront Overlay District. City Council passed this Bill on March 4, 2010 and Mayor Michael Nutter signed it into law on March 17, 2010. The amendment provides:

>   Height Regulations. Except for parcels of land zoned residential or C-2 commercial, no height regulation shall apply to any parcel within the boundaries of this District, including but not limited to the provisions of § 14-1610 ("Old City Residential Area Special District Controls.").

Phila., Pa., Ordinance, Bill No. 100014 (March 17, 2010). As discussed in a separate memorandum opinion, Waterfront Renaissance's constitutional challenges to the March 2006 ordinance's height restriction are moot following this amendment.

2

between I-95 and the Delaware River from Allegheny Avenue to Oregon Avenue. Waterfront Renaissance's site is within this overlay district. On August 17, 2009, the bill was approved. The Central Delaware Riverfront Overlay District is codified at Section 14-1638 of the Philadelphia Code.[4]

Under this ordinance, an applicant for a zoning permit in the Central Delaware Riverfront Overlay District is required to submit a plan of development to the City of Philadelphia Planning Commission and the Planning Commission must approve the plan of development. The Planning Commission determines whether the plan of development is "appropriate in scale, density, character and use for the surrounding community." The

---

[4] The Central Delaware Riverfront Overlay District provides:

> For all properties east of Columbus Boulevard/Delaware Avenue or adjacent to the Delaware River and for all other commercially zoned properties, no zoning permits shall be issued unless (I) the applicant shall have first submitted to the City Planning Commission, and the City Planning Commission shall have approved, a Plan of Development, which shall be approved by the Commission only if the Commission, in its discretion, has determined that the Plan of Development provides for development appropriate in scale, density, character and use for the surrounding community, and (ii) the Planning Commission determines that the requested permits are in conformity with the approved Plan of Development. If the Commission fails to approve, disapprove, conditionally approve or table a proposed Plan of Development within seventy-five (75) days after submission of complete plans to the Commission, the approval of the Commission shall be presumed. Within one hundred eighty (180) days of the effective date of this Ordinance the Commission shall adopt regulations providing objective standards for such design review as may be necessary, prior to implementing the provisions of this subsection 12.

Phila., Pa., The Philadelphia Code § 14-1638(12)(a) (2010), available at
http://www.amlegal.com/nxt/gateway.dll/Pennsylvania/philadelphia_pa/thephiladelphiacode?f=te
mplates$fn=default.htm$3.0$vid=amlegal:philadelphia_pa (last visited Jan. 12, 2011).

Philadelphia Code § 14-1638(12)(a). In addition, the applicant will not receive a zoning permit unless the Planning Commission determines "the requested permits are in conformity with the approved [p]lan of [d]evelopment." Id.

On April 20, 2010, the Planning Commission adopted plan of development regulations and filed the regulations with the Philadelphia Department of Records. The plan of development regulations became effective at midnight on September 27, 2010. See Notification of the Effective Date of the City's Plan of Development Regulations, CMR D.N. Corp. and Marina Towers Ltd. v. City of Philadelphia, No. 07-1045 (E.D. Pa. filed Oct. 8, 2010).

### B. Waterfront Renaissance's Claims

The purpose of the Central Delaware Riverfront Overlay District is "to protect the existing characteristics of the built and natural environment that are essential to achieving the working guidelines of the Civic Vision, adopted by the Philadelphia City Planning Commission . . . , while a Master Plan for the area is developed." See The Philadelphia Code at § 14-1638(1)(h); Plaintiff's Motion at Exh. 1 at ¶ 295. The Central Delaware Riverfront Overlay District requires that the regulations governing the plan of development process be objective. See The Philadelphia Code at § 14-1638(12)(a); Plaintiff's Motion at Exh. 1 at ¶ 314. The Planning Commission will review plans of development to determine whether the "development is appropriate in scale, density, character and use for the surrounding community." See The Philadelphia Code at § 14-

1638(12)(a); Plaintiff's Motion at Exh. 1 at ¶ 314.  The terms "existing characteristics of the built and natural environment that are essential to achieving the working guidelines of the Civic Vision" and "appropriate in scale, density, character and use" are not defined.[5]

Waterfront Renaissance alleges the plan of development regulations list the base zoning classification as one of a number of factors the Planning Commission will consider.  See Plaintiff's Memorandum at 8; Plaintiff's Motion at Exh. 1 at ¶ 321.  It maintains the regulations do not provide quantitative or qualitative standards or guidelines for evaluation of the factors, and, therefore, provide no guidance for which developments will be approved.  See Plaintiff's Memorandum at 9; Motion at Exh. 1 at ¶¶ 324-25.  The regulations also provide the Planning Commission "will consider any item that will have an effect or impact on this public realm."  See Notice of Effective Date of the City's Plan of Development Regulations at Exh. A at § 3.

Waterfront Renaissance concludes that the regulations "place on the applicant the burden of proving that '[the plan of development] provides for development appropriate in scale, density, character and use for the surrounding community,' without providing a complete list of submission requirements and without providing any objective standards by which an applicant may know what it is he must prove."  See Plaintiff's Memorandum at 9.

---

[5] See Plaintiff's Memorandum of Law in Support of Motion for Leave to Supplement Complaint at 7, CMR D.N. Corp. and Marina Towers Ltd. v. City of Phila., No. 07-1045 (E.D. Pa. filed June 25, 2010); Plaintiff's Motion at Exh. 1 at ¶¶ 315-316.

If the Planning Commission does not "approve, disapprove, conditionally approve or table a proposed [p]lan of [d]evelopment within seventy-five (75) days after submission of complete plans to the Commission, the approval of the Commission shall be presumed." See Notice of Effective Date of the City's Plan of Development Regulations at Exh. A at § 6(a). Waterfront Renaissance alleges, because the Planning Commission can table a proposed plan of development, the timing of the process is indefinite. See Plaintiff's Memorandum at 6.[6]

## III. Discussion

### A. Count XVI, Count III, and Count IV

Waterfront Renaissance seeks to supplement its complaint with Count XVI, which raises constitutional challenges to the Central Delaware Riverfront Overlay District and the plan of development regulations. It also seeks to supplement count III and count IV of its second amended complaint with claims of promissory estoppel and detrimental reliance relating to the Central Delaware Riverfront Overlay District and the plan of development regulations.

#### 1. Timeliness

The City argues Waterfront Renaissance's challenge was premature because the regulations were not finalized when Waterfront Renaissance filed its motion to

---

[6] Under the ordinance, the Planning Commission's decision can be appealed to the Court of Common Pleas or the applicant can apply for a variance. See Notice of Effective Date of the City's Plan of Development Regulations at Exh. A at § 8; The Philadelphia Code § 14-1638.

6

supplement its complaint.[7]  In addition, Waterfront Renaissance filed the motion to supplement over a year after it wrote a letter to Mayor Nutter claiming the Central Delaware Riverfront Overlay District was unconstitutional.  See Defendant's Memorandum at 7.  The City claims Waterfront Renaissance is challenging the Central Delaware Riverfront Overlay District and plan of development regulations at this stage because it fears the constitutional claims in its second amended complaint are moot.  Id.

I find the motion to supplement is timely.  Waterfront Renaissance was not required to challenge the Central Delaware Riverfront Overlay District and plan of development regulations until the Planning Commission adopted regulations on April 20, 2010.  See Philadelphia Code at § 14-1638(12)(a) (providing "the Commission shall adopt regulations providing objective standards for such design review as may be necessary, prior to implementing the provisions of this subsection 12").   The finalized version of the plan of development regulations does not substantially differ from the adopted version.

2. Motion to Supplement

a. Standard

Federal Rule of Civil Procedure 15(d) provides:

On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or

---

[7] The City of Philadelphia's Memorandum in Opposition to Plaintiff's Motion for Leave to Supplement Complaint at 4, CMR D.N. Corp. and Marina Towers Ltd. v. City of Philadelphia, No. 07-1045 (E.D. Pa. filed July 22, 2010).

7

> event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d). A supplemental pleading "refers to events that occurred after the original pleading was filed." Owens-Illinois, Inc. v. Lake Shore Land Co., Inc., 610 F.2d 1185, 1188 (3d Cir. 1979). This differs from an amended pleading, "which covers matters that occurred before the filing of the original pleading but were overlooked at the time." Id.

"Requests to supplement pleadings are left to the sound discretion of the court." Tormasi v. Hayman, 2010 WL 1878961, at * 2 (D.N.J. May 10, 2010) (quoting Glenside W. Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1118, 1133 (D.N.J. 1991)). Rule 15(d) "promotes 'judicial economy, avoids multiplicity of litigation, and promotes as complete an adjudication of the dispute between the parties as possible . . . .'" Id. (quoting Hassoun v. Cimmino, 126 F. Supp. 2d 353, 360 (D.N.J. 2000)).

Courts "appl[y] Rule 15(d) in a manner aimed at securing the just, speedy and inexpensive determination of every action – '[t]he standard applicable to motions to amend under [Rule 15(d)] is essentially the same standard that applies to [Rule 15(a)].'" Masimo Corp. v. Philips Elec. N. Am. Corp., 2010 WL 1609899, at *1 (D. Del. Apr. 20, 2010) (quoting Medeva Pharma Ltd. v. Am. Home Prods. Corp., 201 F.R.D. 103, 104 n.3 (D. Del. 2001)). "Leave to file a supplemental complaint should be freely permitted in the absence of undue delay, bad faith, dilatory tactics, undue prejudice to defendants, or

8

futility, and when the supplemental facts are connected to the original pleading." Tormasi, 2010 WL 1878961, at *2 (quoting Hassoun, 126 F.Supp.2d at 360-61); accord Robinson v. Tennis, 2010 WL 830926, at *2 (M.D. Pa. Mar. 4, 2010); Maier ex rel. B.T. v. Canon McMillan Sch. Dist., 2009 WL 1393627, at *1 (W.D. Pa. May 18, 2009) (citing Life & Health Ins. Co. of Am. v. Fed. Ins. Co., 1994 WL 125212, at *1 (E.D. Pa. Apr. 13, 1994)).

      b.      New Cause of Action

The City alleges Rule 15(d) does not allow a new claim based on facts different from those underlying the original complaint. See Defendant's Memorandum at 5. In Planned Parenthood of Southern Arizona v. Neely, 130 F.3d 400, 402 (9th Cir. 1997), the United States Court of Appeals for the Ninth Circuit found, although "leave to permit supplemental pleading is 'favored,'. . . it cannot be used to introduce a 'separate, distinct and new cause of action.'" Id. (internal citations omitted). In Planned Parenthood of Southern Arizona, the plaintiff filed a motion to supplement its complaint four years after final judgment had been rendered in the original action and challenged a different statute than the statute which successfully had been challenged. The court noted "permitting the plaintiffs to supplement their complaint did not serve to promote judicial efficiency." Planned Parenthood of S. Ariz., 130 F.3d at 402. There "would necessarily be two actions since the original suit had been settled for some time." Id. The court stated there were no "'technical obstacles' to plaintiffs bringing a new, separate action to challenge

9

[the statute] as amended." Id.

In United States v. Hicks, 283 F.3d 380, 382-83 (D.C. Cir. 2002), the petitioner filed a motion to supplement his application for collateral relief under 28 U.S.C. § 2255 following the United States Supreme Court decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). The United States Court of Appeals for the District of Columbia stated "[t]he question in this case is whether intervening judicial decisions are the sort of 'occurrences or events' to which Rule 15(d) refers." Hicks, 283 F.3d at 385. The court found they were not. Id. at 386. It reasoned "[t]he purposes to which the rule is typically put support the conclusion that the appropriate bases for supplemental pleadings are new facts bearing on the relationship between the parties, rather than merely changes in the law governing those facts." Id. at 385-86.[8] The Hicks court relied on 6A Wright & Miller § 1504, at 184, which states the uses for Rule 15(d), including that "a party may assert separate or additional claims or defenses arising after commencement of the action, although the courts typically require some relationship between the original and the later accruing material."

The allegations in proposed count XVI are similar to the allegations contained in count XV. Count XVI alleges the Central Delaware Riverfront Overlay District and plan

---

[8] The Hicks court found the petitioner's motion was a motion to amend, not a motion to supplement. 283 F.3d at 383, 386. Although the Supreme Court decided Apprendi after the filing of the petition, the facts giving rise to the petition were not new. "[N]one of the factual occurrences set forth in Hicks' Apprendi motion . . . took place after he filed his initial § 2255 application." Hicks, 283 F.3d at 386. Apprendi merely "alter[ed] the legal significance of these prior events." Id.

10

of development regulations violate the principle of separation of powers and the Philadelphia Home Rule Charter by improperly delegating legislative power to the Planning Commission and by impermissibly delegating the City's zoning power and police power to the Planning Commission; violate equal protection because the standards are vague and indefinite and invite ad hoc regulation and impermissible discrimination; and violate the principle of substantive due process because the review is arbitrary and capricious, is irrational, and is unrelated to any legitimate planning purpose. See Motion at Exh. 1 at ¶¶ 331-34. It alleges the ordinance's purpose was "to prohibit high-rise development in the River's Edge/Penn's Landing North neighborhood except upon the consent of interested civic associations and Councilman DiCicco's office." Id. at ¶ 338. Count XV alleges the height restriction was included in the March 2006 ordinance "solely for the improper, unlawful and unconstitutional purpose of empowering unelected civic associations to control re-development," violated due process because it delegated "land use decisions to private entities without standards," and employed a "variance process for coercive purposes for which it was not intended." Second Amended Complaint at 254.

In addition, the original complaint contained a promissory estoppel claim and a detrimental reliance claim based on the March 2006 ordinance. Waterfront Renaissance now seeks to supplement its complaint with a promissory estoppel claim to enjoin the City from enforcing the Central Delaware Riverfront Overlay District and the plan of development regulations against Waterfront Renaissance's site and with a detrimental

11

reliance claim seeking monetary damages.[9]  Waterfront Renaissance alleges it reasonably relied on the City's support of the project, incurred losses in reasonable reliance on the support, and the Central Delaware Riverfront Overlay District and the plan of development regulations are preventing the development of the project.

Unlike Planned Parenthood of Southern Arizona, the current case is not complete, no settlement or resolution has been reached, and no trial date has been set.  In addition, unlike Hicks, Waterfront Renaissance does not allege the intervening event was a change in the case law.  Rather, the change in the law impacts the relationship between the parties.  See Hicks, 283 F.3d at 385-86 (supplement under Rule 15(d) is appropriate where "new facts bear[] on the relationship between the parties").  Allowing Waterfront Renaissance to supplement its complaint with Count XVI, and to supplement its promissory estoppel and detrimental reliance claims "promotes 'judicial economy, avoids multiplicity of litigation, and promotes 'as complete an adjudication of the dispute between the parties as possible . . . .'"  See Tormasi, 2010 WL 1878961, at *2 (quoting Hassoun, 126 F. Supp. 2d at 360).

---

[9] Both the promissory estoppel and detrimental reliance claims are based on the cause of action for "promissory estoppel."  "[T]o maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise."  Crouse v. Cyclops Indus., 745 A.2d 606, 610 (Pa. 2000) (quoting Restatement (Second) Contracts § 90).

12

c. <u>Bad Faith, Undue Delay, and Prejudice</u>

"Mere delay alone is not enough to deny leave to amend, but 'at some point, the delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party.'" <u>McKenna v. City of Phila.</u>, 511 F. Supp. 2d 518, 527 (E.D. Pa. 2007) (<u>Arthur v. Maersk, Inc.</u>, 434 F.3d 196, 204 (3d Cir. 2006)). Prejudice has been defined as "undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party." <u>Hesling v. Avon Grove Sch. Dist.</u>, 428 F. Supp. 2d 262, 278 (E D. Pa. 2006) (<u>Deakyne v. Comm'rs of Lewes</u>, 416 F.3d 1410, 1434 (3d Cir. 1696)).

The City argues Waterfront Renaissance is using the lawsuit as a delay tactic, and its alleged purpose of building a World Trade Center would be better accomplished by filing a plan of development rather than continuing the lawsuit.

Waterfront Renaissance argues it did not act in bad faith or with undue delay. The Central Delaware Riverfront Overlay District was enacted in April of 2009, the plan of development regulations was adopted on April 20, 2010, and the plan of development regulations was effective September 27, 2010. Waterfront Renaissance filed this motion following the adoption of the regulations.

Waterfront Renaissance alleges no undue prejudice exists. The City has been aware of Waterfront Renaissance's concerns regarding the Central Delaware Riverfront Overlay District since May 26, 2009, when Waterfront Renaissance first objected to the

bill in a letter to Mayor Nutter. In addition, no trial date has been set and expert discovery and dispositive motions deadlines have been stayed because new expert reports are needed. Fact discovery is closed, but Waterfront Renaissance previously filed a motion to re-open fact discovery.

Waterfront Renaissance did not act in bad faith or with undue delay. Even if it did act with undue delay, no prejudice exists because the City knew Waterfront Renaissance objected to the Central Delaware Riverfront Overlay District, no trial date has been set, and the expert discovery and dispositive motions deadlines have been stayed.

### B. The Width Restriction

Waterfront Renaissance seeks to clarify that its complaint challenges the March 2006 ordinance in its entirety, including both the 65' height restriction and the 75' width restriction. It argues "[a]lthough [Waterfront Renaissance] did not specifically reference the width limit in its complaint, [Waterfront Renaissance] sought to enjoin the enforcement of the March 2006 [o]rdinance in its entirety, including both the height limit and the width limit." It maintains no additional fact discovery would be needed, expert discovery has been stayed, and the City will not be prejudiced.

I will deny Waterfront Renaissance's motion to supplement its complaint with references to the width restriction. Waterfront Renaissance did not mention the width restriction in numerous complaints, motions, filings, and discussions. Waterfront Renaissance filed the initial complaint four years ago and challenged an ordinance that

14

was enacted five years ago. It has filed two amended complaints. Waterfront Renaissance's attempt to include a challenge to the width restriction would change its initial claim, as well as the claims in its first and second amended complaints. It has engaged in undue delay because the width restriction has not changed since 2006. The undue delay would prejudice the City because Waterfront Renaissance proposes a change to its theory of liability. See Hesling, 428 F. Supp. 2d at 278 (defining prejudice as "undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party" (quoting Deakyne, 416 F.3d at 1434)).

### C. Monetary Damages

Waterfront Renaissance seeks leave to amend its prayers for relief in counts I and XV of its second amended complaint to include "damages, interest, costs, and attorney fees." The constitutional claims raised in count I and count XV challenging the March 2006 ordinance are moot.[10] It would be futile to amend the prayers of relief for the claims. I will deny the motion to supplement count I and count XV.

## IV. Conclusion

I will grant Waterfront Renaissance's motion to supplement its complaint with Count XVI and to supplement its detrimental reliance and promissory estoppel claims in count III and count IV. The subject matter is similar to the claims raised in the second

---

[10] In March 2010, the March 2006 ordinance was amended to remove the height restriction. This amendment caused the constitutional challenges raised in count I and count XV to become moot.

amended complaint, Waterfront Renaissance did not act in bad faith or with undue delay in filing its motion to supplement the complaint, and no prejudice will result from granting the motion.

I will deny Waterfront Renaissance's motion to supplement its complaint with clarification that it also challenged the width restriction contained in the March 2006 ordinance. The complaint, amended complaints, and numerous other filings did not mention with width restriction when challenging the March 2006 ordinance. The complaints challenged the height restriction.

I will deny Waterfront Renaissance's motion to supplement its complaint with a claim for damages for count I and count XV because count I and count XV are moot.

An appropriate order follows.